UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ASHLI MEGAN ANDERSON,      )
     )    Case No. 1:18CV0070
     )
      Plaintiff,      )    JUDGE JOHN R. ADAMS
     )    MAGISTRATE JUDGE RUIZ
      v.      )
     )
COMMISSIONER OF SOCIAL      )    REPORT AND RECOMMENDATION
SECURITY,      )
     )
      Defendant.      )

Plaintiff Ashli Megan Anderson ("Anderson" or "claimant") challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be vacated and remanded, in part, and affirmed in part.

I. PROCEDURAL HISTORY

On July 7, 2014, Anderson filed an application for SSI benefits, alleging disability beginning January 1, 1995. (R. 8, Transcript ("tr."), at 20, 228-229, 257-

259, 269-289, 301.) Anderson's application was denied initially and upon reconsideration. *Id.* at 101-117, 118-135. Thereafter, Anderson filed a request for a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 162-163.

The ALJ held the hearing on September 2, 2016. (R. 8, tr., at 42-89.) Anderson appeared at the hearing, was represented by counsel, and testified. (*Id.* at 44, 48-82.) A vocational expert ("VE") also attended the hearing and provided testimony. (*Id.* at 44, 82-87.)

On October 27, 2016, the ALJ issued the decision, applying the standard five-step sequential analysis to determine whether Anderson was disabled. (R. 8, tr., at 70-85; *see generally* 20 C.F.R. § 416.920(a).) The ALJ concluded Anderson was not disabled. *Id.* at 70, 85. The Appeals Council denied Anderson's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (R. 8, tr., at 1-3.) Anderson now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case.

Anderson presents the following legal issues for the court's review:

1.  The ALJ lacked substantial evidence to conclude that Ms. Anderson's complaints of disabling symptoms, including pain and fatigue, were not supported by the record.

2.  The ALJ failed to evaluate the treating doctors' opinions consistent with the requirements of SSR 96-2p and 20 C.F.R. § 416.927 and failed to provide good reasons for discounting them.

(R. 10, PageID #: 937.)

## II.  PERSONAL BACKGROUND INFORMATION

Anderson was born in 1992, and was 22 years old, which is defined a younger individual age 18-49, on the application date. (R. 8, tr., at 34, 50, 228.)  Anderson has at least a high school education; and is able to communicate in English. (R. 8, tr., at 34, 50, 269, 271.)  Anderson had no past relevant work. (R. 8, tr., at 34, 83.)

## III.  RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Anderson's brief alleging error by the ALJ. As noted earlier, Anderson applied for SSI on July 7, 2014, alleging disability beginning January 1, 1995. (R. 8, tr., at 20, 228-229.) Anderson listed her physical or mental conditions that limit her ability to work as: "ankylosing spondylitis, sero-negative juvenile rheumatoid; ankylosing spondylosis; sero-negative juvenile arthritis; bone degenerative disease; plantaar fasciitis; fibromyalgia; anxiety; depression; borderline personality; bipolar; ADHD." *Id.* at 270.

On August 22, 2013, Anderson's rheumatologist, Dr. Nora Singer, completed a "Medical Source Statement: Detailed with Hands." (R. 8, tr., at 657-660.)  Dr. Singer diagnosed Anderson with juvenile idiopathic arthritis with enthesopathy, and ankylosing spondylitis. *Id.* at 657. The doctor identified Anderson's symptoms as multiple tender points, non-restorative sleep, excessive fatigue, stiffness, chronic

---

[1]  The summary of relevant medical evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

pain, anxiety, depression and back pain. *Id.* Dr. Singer indicated that emotional factors did not contribute to the severity of the symptoms. *Id.* Anderson's pain was located in the lumbrosacral spine, and bilaterally in her hips, knees, ankles and feet, and her pain was precipitated or worsened by fatigue and activity. *Id.* at 658. The doctor indicated that Anderson's pain and other symptoms would occasionally interfere with her attention and concentration needed to perform even simple tasks at work. *Id.*

Dr. Singer opined that Anderson could stand or walk 15 minutes or less at a time, for a total of two hours, of an eight-hour workday. (R. 8, tr., at 659.)  In addition, Anderson could sit for 30 minutes at a time, for a total of four hours, during an eight-hour workday. *Id.* Dr. Singer opined that Anderson would need a job that permits shifting positions at will. *Id.* The doctor indicated that Anderson will need to take unscheduled breaks during the workday, occurring on an hourly basis, and such breaks, consisting of lying down, sitting quietly, or stretching, will need to last 15 minutes on average, before she can return to work. *Id.* Dr. Singer indicated that Anderson could rarely carry or lift ten pounds, she could occasionally twist, but rarely stoop, crouch or squat, bend or climb stairs. *Id.* at 660. On November 15, 2013, Victor Foorsov, M.D., signed the medical source statement and deferred to Dr. Singer's assessment of limitations. *Id.* at 659-660. Dr. Singer opined that Anderson did not have significant limitations with reaching, handling or fingering (*id.* at 660); Anderson's impairments were likely to produce good days and

4

bad days; and, she would on average miss more than four workdays per month. (R. 8, tr., at 661.)

Psychiatrist Samia Hasan, M.D., completed a medical report on September 10, 2014. (R. 8, tr., at 457-460.) Dr. Hasan stated that Anderson struggles with anxiety, insomnia, and irrational fears. *Id.* at 459. Dr. Hasan stated that she suffers with depression, and anxiety is continuously present. *Id.* Anderson described difficulty "with concentration and distractability," and "a longstanding history of learning problems and attention deficit disorder..." *Id.* Although Dr. Hasan indicated that most of her restrictions of daily activities are secondary to her physical ailments, her "anxiety makes her phobic, avoidant, and at times withdrawn." *Id.* She is quite passive and dependent on her family. *Id.* The psychiatrist indicated that Anderson has a diagnosis of generalized anxiety disorder, attention deficit disorder, and borderline personality disorder, which reflects her unstable and problematic interpersonal relationships. *Id.* at 459- 460. She also has a history of bipolar disorder. *Id.* at 460.

Dr. Hasan indicated most of her psychiatric symptoms dated back to early childhood, and that there has been limited response to treatment, although her insomnia has improved. (R. 8, tr., at 460.) The doctor stated that Anderson has a history of erratic compliance with medication and appointments. *Id.* He noted that she does not handle stress well – her anxiety becomes exacerbated and she withdraws socially. *Id.*

On April 25, 2016, Anderson's primary care physician, Samia Baaklini, M.D., completed a "Physical Residual Functional Capacity" questionnaire. (R. 8, tr., at 600-605.) Dr. Baaklini diagnosed urinary incontinence, but noted that Anderson was also seen by specialists such as a rheumatologist and psychiatrist. *Id.* at 600. The doctor listed her symptoms as chronic pain, back pain and stiffness, knee pain, depressed mood and anxiety, and ankle pain. *Id.* Dr. Baaklini declined to assess Anderson's physical or mental functional limitations, as the doctor was not treating her for the relevant conditions. *Id.* at 601-605.

On July 17, 2016, rheumatologist Dr. Singer completed a "Physical Residual Functional Capacity" questionnaire. (R. 8, tr., at 830-835.) Dr. Singer indicated that Anderson was diagnosed with juvenile idiopathic arthritis with enthesopathy, with a fair prognosis. *Id.* at 830. Her symptoms were pain in the sacroiliac joints, and fatigue. *Id.* Dr. Singer opined that Anderson's depression and anxiety contributed to her symptoms and functional limitations. *Id.* at 831. The doctor indicated that Anderson's pain and other symptoms would frequently interfere with her attention and concentration. *Id.* Dr. Singer opined that Anderson was capable of tolerating low stress jobs, noting "she cannot bend frequently, [and she is] overwhelmed easily." *Id.* at 832. Dr. Singer declined to indicate any functional limitations in a work setting, because she does not perform functional capacity exams. *Id.*

Dr. Singer indicated, however, that Anderson would need a job that permits shifting positions at will from sitting, standing or walking. (R. 8, tr., at 833.) In addition, she noted that Anderson would sometimes need to take unscheduled

6

breaks during the workday, without indicating how often or how long such breaks would be. *Id.*

According to Dr. Singer, Anderson could frequently carry or lift less than ten pounds, and she could occasionally lift or carry ten pounds. (R. 8, tr., at 834.) The doctor opined that Anderson had significant limitations with repetitive reaching, handling or fingering, without specifying the limitations. *Id.* Dr. Singer indicated that Anderson's impairments were likely to produce good days and bad days, and that she would on average miss more about three workdays per month. *Id.* Regarding other limitations that would affect Anderson's ability to work at a regular job on a sustained basis, Dr. Singer noted that she has bipolar illness in addition to her physical impairment of arthritis. *Id.* at 835.

On May 20, 2016, psychiatrist Neera Gupta, M.D., completed an "Ability to do Work-Related Activities (Mental)" assessment. (R. 8, tr., at 837-839.) Dr. Gupta assessed Anderson's abilities to make occupational adjustments for unskilled work as fair or poor in all areas, based on her impairments in sustained concentration and attention. *Id.* at 837-838. Dr. Gupta also noted Anderson was emotionally labile, with a poor response to stress, and had impaired social, interpersonal interactions. *Id.* at 838. The psychiatrist assessed that claimant had poor or no ability to deal with the stress of semiskilled or skilled work; and assessed her as fair in the other mental abilities and aptitudes required for such work, indicating attention and memory "worsen under stress" and she has "poor response to interpersonal stress with lability in mood/behavior." *Id.* Dr. Gupta indicated that

Anderson had a poor or no ability to interact appropriately with the general public, to travel to an unfamiliar place, or to use public transportation. *Id.* She had a fair ability to maintain socially appropriate behavior, or to adhere to basic standards of neatness and cleanliness. *Id.* Dr. Gupta indicated that Anderson's impairments or treatment would cause her to miss, on average, four or more workdays per month. *Id.* at 839.

State agency consulting psychologist Tonnie Hoyle, Psy.D., completed a "Mental Residual Functional Capacity Assessment" on November 18, 2014. (R. 8, tr., at 112-114.) In addition, Dr. Hoyle completed a psychiatric review technique ("PRT"), and opined that Anderson had mild restriction of activities of daily living, with moderate difficulties in "maintaining social functioning" and in "maintaining concentration, persistence or pace." *Id.* at 109-110. The psychologist opined that Anderson had no understanding or memory limitations, but had limitations in sustained concentration and persistence. *Id.* at 113. Dr. Hoyle opined that Anderson was moderately limited in her ability to carry out detailed instructions, in her ability to maintain concentration and attention for extended periods, and in her ability to complete a normal workday and workweek without interruption from psychologically based symptoms, and to perform at a consistent pace without an unreasonable amount of rest periods. *Id.* The psychologist found that claimant has the ability to sustain concentration and to persist to complete simple, routine tasks. *Id.* The claimant was moderately limited in several areas of social interaction, specifically in the ability to interact appropriately with the public, and in the ability

8

to accept instructions and respond appropriately to criticism from supervisors. *Id.* at 113. The psychologist found that claimant can interact superficially with coworkers and supervisors. *Id.* at 114. Dr. Hoyle opined that Anderson was moderately limited in her ability to respond appropriately to changes in the work setting, and that she had the ability to tolerate a low stress work environment. *Id.*

On reconsideration, state agency consulting psychologist Aracelis Rivera, Psy.D., completed a "Mental Residual Functional Capacity Assessment" on February 20, 2015. (R. 8, tr., at 130-132.) Dr. Rivera completed a PRT as well, and concurred that Anderson had mild restriction in activities of daily living, with moderate difficulties maintaining social functioning and maintaining concentration, persistence or pace. *Id.* at 127. Dr. Rivera also agreed that Anderson had limitations in sustained concentration and persistence. *Id.* at 130. Dr. Rivera opined that Anderson was moderately limited in her ability to carry out detailed instructions, maintain concentration and attention for extended periods, and complete a normal workday and workweek without interruption from psychologically based symptoms, and to perform at a consistent pace without an unreasonable amount of rest periods. *Id.* at 130-131. The psychologist found that claimant had the ability to sustain concentration and to persist to complete simple, routine tasks. *Id.* at 131.

Anderson was moderately limited in several areas of social interaction, specifically in the ability to interact appropriately with the public, in the ability to accept instructions and respond appropriately to criticism from supervisors, and in the ability to get along with coworkers and peers without distracting them or

9

exhibiting behavioral extremes. (R. 8, tr., at 131.)  The psychologist found that claimant can interact superficially with coworkers and supervisors. *Id.* Dr. Rivera opined that Anderson was moderately limited in her ability to respond appropriately to changes in the work setting, and that she had the ability to tolerate a low stress work environment. *Id.*

## IV.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in the October 27, 2016, decision:

1.  The claimant has not engaged in substantial gainful activity since July 7, 2014, the application date (20 CFR 416.971 *et seq.*).

2.  The claimant has the following severe impairments:  dysfunction of major joints, fibromyalgia, ankylosing spondylitis, carpal tunnel syndrome, affective disorder, personality disorder, organic brain syndrome, and anxiety disorder (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can frequently climb ramps and stairs.  She should never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch and crawl. She should never be exposed to hazards. She can have frequent bilateral fingering. She would be limited to performing simple routine tasks. She can have occasional interaction with supervisors, coworkers and the public, and is limited to routine workplace changes.

5.  The claimant is has [sic] no past relevant work (20 CFR 416.965).

6. The claimant was born on [***] 1992, and was 22 years old, which is defined a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 7, 2014, the date the application was filed (20 CFR 416.920(g)).

(R. 8, tr., at 22, 23, 34, 35.)

## V. DISABILITY STANDARD

A claimant is entitled to receive SSI benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 416.905(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination. *See* 20 C.F.R. §

11

416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).
>
> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004); *see also* 20 C.F.R. § 416.920(a)(4).

## VI.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human*

12

*Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VII.  ANALYSIS

Anderson presents the following legal issues for the court's review:

1.  The ALJ lacked substantial evidence to conclude that Ms. Anderson's complaints of disabling symptoms, including pain and fatigue, were not supported by the record.

2.  The ALJ failed to evaluate the treating doctors' opinions consistent with the requirements of SSR 96-2p and 20 C.F.R. § 416.927 and failed to provide good reasons for discounting them.

(R. 10, PageID #: 937.)

A.  Complaints of Pain and Fatigue

Anderson argues that the ALJ lacked substantial evidence to conclude that her complaints of disabling symptoms, including pain and fatigue, were not supported by the record. (R. 10, PageID #: 937, 949.) She contends that the ALJ's focus on normal clinical findings and other objective diagnostic results was an application of the wrong standard for evaluating her fibromyalgia. *Id.* at 950-951. She also argues that the ALJ improperly evaluated her arthritis. *Id.* at 951-952.

The claimant's statements as to pain or other symptoms will not alone establish that she is disabled. *Walters*, 127 F.3d at 531 (citing 20 C.F.R. § 404.1529(a)). The Sixth Circuit has established a two-part test to evaluate complaints of disabling pain when the pain forms a basis of the claimant's disability claim. *Rogers v. Commissioner*, 486 F.3d 234, 247 (6th Cir. 2007); *see also* SSR 16-3p, 2017 WL 5180304, at *3-*4 (Oct. 25, 2017).[2]  First, the ALJ must determine whether there is "an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms." *Id.* (*citing* 20 C.F.R. § 416.929(a)).

If the first test is satisfied, the ALJ must then evaluate "the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Rogers*, 486 F.3d at 247. Social Security Ruling 16-3p lists

---

[2]  Social Security Ruling 16-3p superseded SSR 96-7p, and is to be used by ALJs when making determinations and decisions on or after March 28, 2016.  SSR 16-3P, 2017 WL 5180304, at *1. The decision here was dated October 27, 2016.  (R. 8, tr., at 35.)

the factors relevant to the ALJ's determination at this step. These factors include: the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain, and, "[a]ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms." SSR 16-3p, 2017 WL 5180304, at *7-*8; *see also Felisky v. Bowen*, 35 F.3d 1027, 1038 (6th Cir. 1994) (citing 20 C.F.R. § 1529(a), (c)). An ALJ is not required to expressly address all the factors listed in SSR 16-3p, but should sufficiently articulate his or her assessment of the evidence to assure the court that he or she considered all relevant evidence. *Cross v. Commissioner*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) (citing *Blom v. Barnhart*, 363 F. Supp. 2d 1041, 1055 (E.D. Wis. 2005)); *see also Williams v. Astrue*, No. CIV.A.3:07-CV-0965-N, 2008 WL 4490792, at *10 (N.D. Tex. Oct. 3, 2008).

Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must decide the credibility of the claimant's allegations of pain "based on a consideration of the entire case record." *Rogers*, 486 F.3d at 247. To the extent that the ALJ's findings are based on the credibility of the claimant, those findings are accorded great weight and deference. *Walters*, 127 F.3d at 531; *Gonzalez v. Commissioner*,

15

No. 1:06CV687, 2008 WL 584927, at *5 (W.D. Mich. Jan. 17, 2008).  The ALJ is not permitted to make credibility determinations based solely upon intangible or intuitive notions about an individual's credibility, but rather the ALJ's credibility determinations must be "based on a consideration of the entire case record," and "must find support in the record." *Rogers*, 486 F.3d at 247-248.

In her application, Anderson did not specifically list chronic pain or fatigue among the physical conditions that limit her ability to work.[3] (R. 8, tr., at 270.)  In her testimony at the hearing, however, Anderson responded to the ALJ's question, concerning "why you believe you're unable to work full-time, and why you're disabled?" by stating, "The pain and stuff that I go through. [.....] The pain I go through every day, and the things that I just simply can't do."  (R. 8, tr., at 53-54.) When asked to identify where she was experiencing pain, Anderson responded it was in her back, her spine, her knees and ankles, her hips, and her fingers. *Id.* at 55.

The ALJ determined that Anderson has severe physical impairments of "dysfunction of major joints, fibromyalgia, ankylosing spondylitis, [and] carpal tunnel syndrome."  (R. 8, tr., at 22-23.)  The ALJ stated that the evidence of record shows a long history of juvenile idiopathic arthritis ("JIA") with enthesopathy,

---

[3]  Anderson listed her physical or mental conditions that limit her ability to work as: "ankylosing spondylitis, sero-negative juvenile rheumatoid; ankylosing spondylosis; sero-negative juvenile arthritis; bone degenerative disease; plantaar fascitis; fibromyalgia; anxiety; depression; borderline personality; bipolar; ADHD." (R. 8, tr., at 270.)

16

fibromyalgia, and a more recent diagnosis of ankylosing spondylitis. *Id.* at 27. The ALJ also found that the claimant has the following non-severe impairments: "urinary incontinence, ankle fracture, plantar fasciitis, urticaria, Allergic rhinoconjunctivitis and chronic sinusitis, sleep apnea, and obesity." *Id.* at 22.

In determining the claimant's RFC, the ALJ stated that she applied the two-part test (discussed in *Rogers)*, and indicated, "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." (R. 8, tr., at 22-23.) The ALJ acknowledged that Anderson alleged disability based, in part, on ankylosing spondylitis, sero-negative juvenile rheumatoid arthritis and fibromyalgia. (R. 8, tr., at 26.) She stated that Anderson reported that "her arthritis causes pain, stiffness and injury." *Id.* at 26-27, citing tr., at 294. The ALJ recognized that the claimant testified that she had pain in her knees, hands, feet, back, and ankles, and that she believes she is disabled, in part, because of her pain. *Id.* at 27. The ALJ found, however, that her statements concerning the intensity, persistence and limiting effects of her symptoms "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*

Anderson argues that the reasons for the ALJ's finding must be grounded in the evidence in the record and articulated in the decision. (R. 10, PageID #: 950.) She contends that the ALJ's alleged focus on objective diagnostic results is the

17

wrong standard to apply in evaluating fibromyalgia and rheumatoid arthritis with enthesopathy. *Id.*

### 1.  Fibromyalgia

The Sixth Circuit has recognized that fibromyalgia can be a severe impairment. *Davila v. Commissioner*, 993 F. Supp.2d 737, 754 (N.D. Ohio 2014) (citing *Rogers,* 486 F.3d at 243). Because of the nature of fibromyalgia, application of the usual disability analysis is challenging. *Swain v. Commissioner*, 297 F. Supp.2d 986, 990 (N.D. Ohio 2003). Unlike many medical conditions, fibromyalgia is not amenable to objective diagnosis, and medical evidence confirming the severity of the alleged pain almost never exists. *Davila,* 993 F. Supp.2d at 755; *Swain,* 297 F. Supp.2d at 990.

Social Security Ruling (SSR) 12-2p describes criteria for evaluating whether a person has a medically determinable impairment of fibromyalgia. *Luukkonen v. Commissioner*, No. 15-1561, 2016 WL 3426370, at *4-*5 (6th Cir. June 22, 2016). Under SSR 12-2p, a person has fibromyalgia if: (1) there is a history of widespread pain, in all quadrants of the body, that has persisted for at least 3 months (the pain may fluctuate in intensity and may not always be present); (2) at least eleven of eighteen possible positive tender points are found on physical examination; and (3) there is evidence that other disorders were excluded as possible causes of the pain. SSR 12-2p, 2012 WL 3104869, at *2-*3. The claimant must satisfy all three of these elements to have a medically determinable impairment of fibromyalgia. SSR 12-2p, 2012 WL 3104869, at *2.

18

This court examines all the evidence in the record. *See Walker*, 884 F.2d at 245; *Hubbard*, 2012 WL 883612, at *5 (quoting *Heston*, 245 F.3d at 535). The court notes that Dr. Singer, Anderson's rheumatologist, did not diagnose the claimant with fibromyalgia, *see, e.g.*, R. 8 tr., at 657 (juvenile idiopathic arthritis with enthesopathy; ankylosing spondylitis); 830 (juvenile idiopathic arthritis with enthesopathy). Although there are references in the record to an alleged past diagnosis of fibromyalgia (*see, e.g.*, R. 8, tr., at 27, citing tr., at 353-354 ("2F/10"), 423 ("6F/8")), the original diagnosis itself is not evident in the record. For example, there is no indication that any doctor found at least 11 of 18 possible positive tender points on physical examination. *See* SSR 12-2p, 2012 WL 3104869, at *3. The presence of these tender points is the primary diagnostic indicator of the disease. *Swain*, 297 F. Supp. 2d at 990 (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). Nor is there any evidence of a finding that Anderson's other disorders (such as her arthritis) were excluded as possible causes of the pain. *See* SSR 12-2p, 2012 WL 3104869, at *3. The ALJ, however, found that fibromyalgia was among Anderson's severe impairments, and neither party contests that finding. (R. 8, tr., at 22.)

Nonetheless, "the mere diagnosis of an impairment says nothing about the severity of that impairment." *Kutscher v. Commissioner*, No. 1:13CV1389, 2014 WL 3895220, at *13 (N.D. Ohio Aug. 8, 2014) (citing *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988)). Certainly, a diagnosis of fibromyalgia is not equivalent to a finding of disability, or an entitlement to disability benefits. *Stankoski v. Astrue*, No. 12-

19

4227, 2013 WL 4045974, at *4 (6th Cir. Aug. 12, 2013) (citing *Vance v. Commissioner*, No. 07-5793, 2008 WL 162942, at *4 (6th Cir. Jan. 15, 2008)); *Sarchet*, 78 F.3d at 307.

Anderson argues that the ALJ "fail[ed] to appropriately evaluate [her] fibromyalgia" under SSR 12-2p, in finding that the objective evidence did not support the disabling nature of her impairments. (R. 10, PageID #: 951.) The Sixth Circuit, in *Luukkonen*, found that an argument that an ALJ failed to properly apply SSR 12-2p's guidelines for determining whether the claimant has a medically determinable impairment of fibromyalgia was harmless where the ALJ determined that claimant did have fibromyalgia, and her fibromyalgia constituted a severe impairment at Step Two. *Luukkonen*, 2016 WL 3426370, at *5.

The ALJ here determined that "diagnostic imaging does not support a finding of disability." (R. 8, tr., at 27.) The ALJ did not rely on objective diagnostic results from the MRIs or clinical testing alone (R. 10, PageID #: 951), however. The ALJ also stated that "claimant's treatment for her JIA, fibromyalgia, AS [ankylosing spondylitis], and joint pain has remains [*sic*] routine and conservative. Surgery has not been suggested." *Id.* The ALJ noted that the record shows that Anderson was treated with epidural steroidal injections for her knees, physical therapy, and medication, all of which provided some relief. *Id.* The ALJ indicated that Anderson was also advised that her JIA pain and fibromyalgia can be improved by weight loss; and after gastric-bypass surgery (and weight loss), claimant testified that she now has less pain. *Id.* The Commissioner points out, correctly, that mild symptoms

20

that respond to conservative treatment will not support a disability finding. (R. 11, PageID #: 974; *see, e.g.*, *McKenzie v. Commissioner*, 215 F.3d 1327, 2000 WL 687680, at *4 (6th Cir. May 19, 2000) (TABLE, text in WESTLAW); 20 C.F.R. § 416.929(c)(3)(iv)-(v).)

The ALJ also noted that multiple physical examinations showed no significant findings, and for example, showed that claimant had full range of motion of the neck, shoulders, elbows, wrists and hips; no myalgias; no back pain; no joint swelling, erythema or tenderness. *Id.* at 28 (citing tr., at 350, 363, 394, 397, 537, 625, 809, 814, 820). It is proper for an ALJ to make a finding on the credibility of a claimant's statements regarding the limiting effects of her fibromyalgia based on a consideration of the entire case record. *Luukkonen*, 2016 WL 3426370, at *5; *Rogers*, 486 F.3d at 247-248. The ALJ provided ample support for the conclusion that Anderson's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence in the record.

More importantly, before a claimant with fibromyalgia can be found to be disabled, there must be "sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." SSR 12-2p, 2012 WL 3104869, at *2. The claimant has the burden to present evidence showing she is disabled, *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)), and Anderson has not presented medical evidence demonstrating that her fibromyalgia caused limitations beyond those the ALJ incorporated into her RFC. *See generally* R. 10, PageID #:

949-953. Anderson fails to identify any specific physical limitations which should have been included in the RFC relating to fibromyalgia, nor does she cite to any medical opinion evidence that demonstrates fibromyalgia causes her to have any significant functional work-related limitations. *Id.*; *see, e.g.*, *Kutscher*, 2014 WL 3895220, at *13.

The court finds no error in the decision's treatment of Anderson's fibromyalgia. *See, e.g.*, *Luukkonen*, 2016 WL 3426370, at *5 (although the ALJ did not explicitly cite SSR 12–2p, decision correcting applied the SSR's principles).

### 2. Arthritis

Anderson contends as well that the ALJ improperly evaluated her arthritis. (R. 10, PageID #: 951-952.)  She asserts that the ALJ made no finding regarding her arthritis—neither finding it to be a severe nor a non-severe impairment. *Id.* at 938, citing R. 8, tr., at 23-24. Anderson argues that it is unclear from the record "whether [the ALJ] actually considered the inflammatory disease as a separate medically determinable impairment or whether she viewed it as the same as ankylosing spondylitis." *Id.* at 952.

At Step Two, the ALJ determined that Anderson has, among her other impairments, the severe physical impairments of "dysfunction of major joints" and ankylosing spondylitis, which is a type of inflammatory arthritis.[4] (R. 8, tr., at 22-

---

[4] Ankylosing spondylitis is "a form of degenerative joint disease that affects the spine.  It is a systemic illness ... producing pain and stiffness as the result of inflammation of the sacroiliac, intervertebral, and costovertebral joints." *Gonzales v. Commissioner*, No. 3:13 CV 2341, 2015 WL 687850, at *7 (N.D. Ohio Feb. 18,

23.) At Step Three, in determining whether any of Anderson's impairments was of
such severity that it met or medically equaled one of the listed impairments, the
ALJ stated that the decision considered, among others, Listing 14.09 (inflammatory
arthritis). *Id.* at 23. The ALJ, however, found that "Listing 14.09 was not met
because the record does not document .... (C) ankylosing spondylitis or other
spondyloarthropathies ...." *Id.* at 24. That, after having found ankylosing spondylitis
a severe impairment in Step Two. The Step Three analysis contains no further
discussion of Anderson's diagnosed ankylosing spondylitis (nor is there any explicit
discussion of her juvenile idiopathic arthritis).

Because the ALJ determined at Step Two that Anderson had the severe
physical impairments of "dysfunction of major joints" and ankylosing spondylitis (R.
8, tr., at 22-23), the ALJ was then required to:

> . . . consider the impairment at step three of the sequential analysis.
> *See* [*Reynolds v. Comm'r of Soc. Sec.*, 424 Fed.Appx. 411, 415 (6th Cir.
> 2011)] (finding that the ALJ "must compare the medical evidence with
> the requirements for listed impairments in considering whether the
> condition is equivalent in severity to the medical findings for any
> Listed Impairment."). In *Reynolds*, the court found that "by failing to
> analyze Reynolds' physical condition in relation to the Listed
> Impairments," the ALJ "skipped an entire step of the necessary
> analysis." *Id.* at 416.  The *Reynolds* court found that "[t]he ALJ's error
> was not harmless, for the regulations indicate that, if a person is found
> to meet a Listed Impairment, they are disabled within the meaning of
> the regulations and are entitled to benefits; no more analysis is
> necessary." *Id.* (citing 20 C.F.R. § 404.1520(a)(4)(iii)).

─────────────

2015); *see also* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.00(D)(6)(b) (ankylosing
spondylitis is a type of inflammatory arthritis involving the spine).

23

*Whitaker v. Berryhill*, No. 4:16CV38, 2017 WL 9251310, at *4 (E.D. Tenn. Aug. 11, 2017), *adopted by* 2017 WL 4030578 (E.D. Tenn. Sept. 13, 2017).

The relevant requirements for Listing 14.09(C) (ankylosing spondylitis), for example, are, in relevant part:

> a. General. The spectrum of inflammatory arthritis includes a vast array of disorders that differ in cause, course, and outcome. Clinically, inflammation of major peripheral joints may be the dominant manifestation causing difficulties with ambulation or fine and gross movements; there may be joint pain, swelling, and tenderness. The arthritis may affect other joints, or cause less limitation in ambulation or the performance of fine and gross movements. However, in combination with extra-articular features, including constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss), inflammatory arthritis may result in an extreme limitation.

> b. Inflammatory arthritis involving the axial spine (spondyloarthropathy). In adults, inflammatory arthritis involving the axial spine may be associated with disorders such as:

> * * * * *

> (ii) Ankylosing spondylitis;

> * * * * *

> e. How we evaluate inflammatory arthritis under the listings.

> * * * * *

> (i) Listing-level severity in . . . 14.09C1 is shown by an impairment that results in an "extreme" (very serious) limitation. . . . In 14.09C1, if you have the required ankylosis (fixation) of your cervical or dorsolumbar spine, we will find that you have an extreme limitation in your ability to see in front of you, above you, and to the side. Therefore, inability to ambulate effectively is implicit in 14.09C1, even though you might not require bilateral upper limb assistance.

> (ii) Listing-level severity is shown in . . . 14.09C2 . . .by inflammatory arthritis that involves various combinations of complications of one or more major peripheral joints or other joints, such as inflammation or

24

deformity, extra-articular features, repeated manifestations, and constitutional symptoms or signs. Extra-articular impairments may also meet listings in other body systems.

20 C.F.R. Pt. 404, Subpt. P. App. 1, § 14.00(D)(6).

14.09 Inflammatory arthritis.  As described in 14.00D6.  With:

* * * * *

C. Ankylosing spondylitis or other spondyloarthropathies, with:

1. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees); or

2. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1409(C).

The ALJ did not analyze Anderson's physical condition and the related medical evidence of record in relation to the Listed Impairments, specifically Listing 14.09(C). Thus, the ALJ skipped an entire step of the necessary analysis and erred at Step Three. *Whitaker*, 2017 WL 9251310, at *4; *see also Reynolds*, 424 Fed.Appx. at 415-416.

The Sixth Circuit has found that an error at Step Three may be harmless, however, "if elsewhere in the disability determination, the ALJ provides a reasoned explanation as to why the claimant's impairment does not satisfy a listing." *Whitaker*, 2017 WL 9251310, at *4 (quoting *Huskey v. Colvin*, No. 3:15CV279, 2016

WL 6573796, at *5 (E.D. Tenn. Aug. 22, 2016)); *see also Bledsoe v. Barnhart*, 165

Fed.Appx. 408, 411 (6th Cir. 2006); *Wilson v. Colvin*, No. 3:13CV710, 2015 WL

1396736, at *3 (E.D. Tenn. Mar. 26, 2015) (citing cases).  Nonetheless, the ALJ's

decision must contain "sufficient analysis to allow for meaningful judicial review of

the listing impairment decision." *Whitaker*, 2017 WL 9251310, at *4 (quoting

*Gonzales*, 2015 WL 687850, at *6).

The ALJ's decision recognized, in the subsequent discussion determining

Anderson's RFC, that the record evidence showed a long history of juvenile

idiopathic arthritis with enthesopathy and a diagnosis of ankylosing spondylitis. (R.

8, tr., at 27.)[5] Anderson's rheumatologist, Dr. Singer, in the August 2013 Medical

Source Statement, listed her diagnoses as juvenile idiopathic arthritis with

enthesopathy and ankylosing spondylitis. (R. 8, tr., at 657.)  The ALJ, however,

determined that diagnostic imaging does not support a finding of disability. *Id.* at

27. The ALJ discussed x-rays of claimant's knee and MRIs of the knee and pelvis,

and noted the same conservative treatment regimen already set forth above, in the

section concerning fibromyalgia. *Id.* at 27-28; *see generally, supra*, Sect. VII.A.1.

However, the ALJ did not evaluate the evidence of claimant's ankylosing

spondylitis, compare it to Listing 14.09(C) and give a reasoned explanation

regarding why claimant did not meet the Listing, thereby preventing meaningful

---

[5] The ALJ's decision indicated Anderson was diagnosed with ankylosing
spondylitis in 2015, (R. 8, tr. 27, PageID #: 77, citing Ex. 2F/10), but the cited record
is from November 2013, and it indicates Anderson was present for a disability
assessment because of an A/S diagnosis. (R. 8, tr. 27, PageID #: 353.)

judicial review. *Reynolds*, 424 Fed.Appx. at 416 (citing cases). The ALJ's decision, likewise, lacks similar analysis regarding Anderson's juvenile idiopathic arthritis. Without such an evaluation, the court cannot find that the ALJ's decision at Step Three was supported by substantial evidence. *Id.*

Thus, the error at Step Three is not harmless, and the decision should be remanded for a more complete evaluation of whether Anderson's impairments meet or medically equal the severity of Listing 14.09.

### B.  Treating Physicians

Anderson argues that the ALJ failed to evaluate her treating physicians' opinions consistent with the requirements of SSR 96-29 and 20 C.F.R. § 416.927, and failed to provide good reasons for discounting them.  (R. 10, PageID #: 937, 953.)  The claimant contends that the ALJ's reasons for discounting every opinion of every treating physician were vague.  *Id.* at 953.

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians.[6] *Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.  This doctrine, often referred to as the "treating

---

[6]  Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and purport to apply to the evaluation of opinion evidence for claims filed before March 27, 2017. 82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017).  Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect.  For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision.

physician rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are often well-equipped to provide a complete picture of the individual's health and treatment history. *Id*.; 20 C.F.R. § 416.927(c)(2). The treating physician doctrine requires opinions from treating physicians to be given controlling weight when the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.  In other words, treating physicians' opinions are only given deference when supported by objective medical evidence. *Vance*, 2008 WL 162942, at *3 (citing *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003)).

Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s). *Blakley*, 581 F.3d at 406; *Vance*, 2008 WL 162942, at *3.  Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating physician's opinion, and the reasons for that weight. *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407; *Winning v. Commissioner*, 661 F.Supp.2d 807, 818-819 (N.D. Ohio 2009) (quoting SSR 96-2p).  The obligation to provide good reasons permits meaningful and efficient review of the ALJ's application of the treating physician rule. *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011).

Unless a treating source's opinion is given controlling weight, the ALJ is required to consider the following factors in deciding the weight to give any medical opinion: the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source. 20 C.F.R. §§ 416.927(c),(e); *see generally Gayheart*, 710 F.3d at 376; *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). While the ALJ is directed to consider the factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in the decision. *Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).

### 1.  Dr. Singer

The ALJ reviewed in some detail the treating rheumatologist Dr. Singer's August 2013 medical source statement, treatment notes, and July 2016 physical RFC questionnaire. (R. 8, tr., at 30-31; *see generally, supra*, Sect. III, Relevant Medical Evidence.) The ALJ then assessed Dr. Singer's opinions as follows:

> In considering Dr. Singer's opinion, it is noted that she is a treatment provider with the longitudinal relationship with the claimant, since at least 2013. However, under 404.1527d and SSR 96-5p, a statement of [sic] that the claimant is disabled or unable to work is not a medical opinion, but an administrative finding dispositive of the case, and an issue reserved to the Commissioner. Additionally, Dr. Singer's opinion is inconsistent with the evidence of record, including her own treatment notes, which show the [sic] other than muscle spasms, and tenderness of joints, the claimant had full range of motion. It is also inconsistent with the claimant's activities of daily living, which include providing childcare for a 15-20 child [sic], painting with acrylics, attending to her mother if she had a seizure, riding a bike, watching television or a movie, driving, traveling to Boston, and counting

change. She is also able to concentrate sufficiently to drive, paint, and count change.  Accordingly, I give this opinion little weight.

(R. 8, tr., at 31, internal citations omitted.)

Anderson concedes that the ALJ recited all of Dr. Singer's findings and opinions, but disagrees that little weight should have been assigned to them.  (R. 10, PageID #: 956.)  The claimant disputes the ALJ's reasoning and interpretation of the evidence. *Id.* at 956-957.

The ALJ supported her reasons with multiple citations to the record, which she asserted were inconsistent with the doctor's opinion. *See generally* R. 8, tr., at 31; 20 C.F.R. § 416.927(c)(4). The ALJ recognized Dr. Singer as claimant's treating physician, and the nature, extent, and length of the treatment relationship, which spanned several years, as evidenced by the discussion of her treatment in the medical record. *See generally id.* at 27-28, 31; 20 C.F.R. § 416.927(c)(1), (2).

The claimant points to evidence that would support a contrary conclusion to the ALJ's determination.  (R. 10, PageID #: 956-957.) The relevant issue, however, is not whether there is evidence to support a ruling different than that reached by the ALJ. *Lebro ex rel. R.L. v. Commissioner*, No. 1:13CV1355, 2014 WL 3749221, at *11 (N.D. Ohio July 29, 2014).  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether some evidence might support another conclusion. *See Kidd v. Commissioner*, No. 99-6481, 2001 WL 345787, at *3 (6th Cir. Mar. 27, 2001); *Martin ex rel. Martin v. Chater*, 91 F.3d 144,

1996 WL 428403, at *4 (6th Cir. 1996) (TABLE, text in WESTLAW) (per curiam);

*Mullen*, 800 F.2d at 545; *Kinsella*, 708 F.2d at 1059.

The court finds that the ALJ's discussion of Dr. Singer's opinion is sufficient.

The decision provides good reasons for the weight assigned, evidences consideration

of several of the relevant factors, and the ALJ is not required to provide an

"exhaustive factor-by-factor analysis" in the decision. *Francis*, 2011 WL 915719, at

*3. The record evidence as discussed in the ALJ's decision is such that "a reasonable

mind might accept as adequate" support for the ALJ's decision concerning Dr.

Singer. *See Kirk*, 667 F.2d at 535 (quoting *Richardson*, 402 U.S. at 401).

### 2. Dr. Gupta

The ALJ reviewed in some detail the treating psychiatrist Dr. Gupta's May

2016 medical opinion. (R. 8, tr., at 32.) The ALJ then assessed Dr. Gupta's opinion

as follows:

> In considering this opinion, it is noted that Dr. Gupta had a treatment
> relationship with the claimant since 2014. However, Dr. Gupta's
> opinion is not entirely consistent with the evidence of record, including
> mental status examination findings, and the claimant's activities of
> daily living. For example, Dr. Gupta's notes show that while the
> claimant' symptoms were considered "severe" in September 2014, by
> January 2015, most of them had improved to "moderate." Nor is it
> entirely consistent with the claimant's activities of daily living,
> discussed above, which include traveling to Boston, swimming in a
> friend's pool, riding a bike, eating at a Golden Corral Buffet regularly,
> and working as a nanny. Accordingly, I give this opinion little weight.

(R. 8, tr., at 32, internal citations omitted.)

Anderson argues that the ALJ mischaracterized evidence and took it out of

context. (R. 10, PageID #: 958-959.) For example, Anderson contends that the ALJ's

statement that her symptoms had improved from "severe" in September 2014, to "moderate" a few months later, in January 2015, is a selective reading of the evidence, because it was also noted at the latter appointment that her symptoms were worsening. *Id.* at 958. The evidence is mildly contradictory: At a September 30, 2014, appointment, Dr. Gupta's assessment of the severity of Anderson's symptoms was indicated as "severe." (R. 8, tr., at 505, 526.) Yet, at a January 9, 2015, follow-up visit, less than four months later, Dr. Gupta assessed that Anderson's symptom severity was "moderate" yet "worsening." *Id.* at 494, 498. At that January appointment, however, Dr. Gupta noted that "patient reports that symptoms have been essentially stable," although Anderson reported some increase in anxiety at night, related to worries that her father was ill, and concern that her parents might die. *Id.* at 495. Dr. Gupta also reported that Anderson reported "that her mood is more stable and she feels her attention deficit disorder is treated well" with medication. *Id.* at 496.

It is not the role of this court to resolve conflicts in the evidence. *See Wright*, 321 F.3d at 614; *Garner*, 745 F.2d at 387. The Commissioner's determination must stand if supported by substantial evidence, regardless of whether some evidence might support another conclusion. *See Kidd*, 2001 WL 345787, at *3; *Martin*, 1996 WL 428403, at *4; *Mullen*, 800 F.2d at 545; *Kinsella*, 708 F.2d at 1059.

The ALJ recognized Dr. Gupta as claimant's treating physician, and assessed the nature, extent, and length of the treatment relationship, which spanned several years. *See generally id.* at 32; 20 C.F.R. § 416.927(c)(1), (2). In addition, the ALJ

supported the reasoning with several citations to the record that she determined were inconsistent with the doctor's opinion. *See generally* R. 8, tr., at 32; 20 C.F.R. § 416.927(c)(4).

The court finds that the ALJ's discussion of Dr. Gupta's opinion is sufficient. The decision provides good reasons for the weight assigned, and evidences consideration of several of the relevant factors. The record evidence as discussed in the ALJ's decision is such that "a reasonable mind might accept [it] as adequate" support for the ALJ's decision concerning Dr. Gupta. *See Kirk*, 667 F.2d at 535 (quoting *Richardson*, 402 U.S. at 401).

### 3. Dr. Hasan

Psychiatrist Dr. Hasan[7] treated Anderson before she saw Dr. Gupta. The ALJ summarized Dr. Hasan's September 2014 medical report, and then assessed it as follows:

> This opinion is vague in part, and not stated in clear functional terms. Additionally, it is generally inconsistent with the evidence of record, which shows that when she takes medication her mental condition was stable, she did better, and her ADHD was well controlled. Accordingly, I give this opinion little weight.

(R. 8, tr., at 31, internal citations omitted.) Anderson contends that the ALJ's rationale itself is vague and not supported by the evidence. (R. 10, PageID #: 959-960.)

---

[7] Although Anderson notes, correctly, that the ALJ misidentified the source of this opinion as Dr. Levine (R. 8, tr., at 31), the claimant also misidentifies the doctor as "Dr. Samia Hassam" and "Dr. Hassan." (R. 10, PageID #: 959.) The doctor's name appears in the record as Samia Hasan, M.D. (R. 8, tr., at 457, 458.)

A medical "opinion" under the regulations describes not only the nature and severity of the claimant's impairments, but also what the claimant can do despite her impairments, and what her physical or mental restrictions are in the workplace. *See* 20 C.F.R. § 416.927(a)(2); *see, e.g.*, *Dunlap v. Commissioner*, No. 11-5633, 2012 WL 6700319, at *3 (6th Cir. Dec. 27, 2012). This court examines all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker*, 884 F.2d at 245; *Hubbard*, 2012 WL 883612, at *5 (quoting *Heston*, 245 F.3d at 535). Examining Dr. Hasan's medical report, the court agrees that it is vague insofar as Dr. Hasan does not set out what Anderson can do despite her mental impairments. *See generally* R. 8, tr., at 457-460. For example, Dr. Hasan stated that most of her daily activity restrictions are secondary to her physical ailments, without specifying what restrictions should be imposed. *Id.* at 459. The doctor also stated that Anderson was quite passive and that her anxiety makes her phobic, avoidant, and withdrawn, but the opinion lacked explanation. *Id.* at 459. The ALJ's decision provides good reasons for the weight assigned. The court finds that the ALJ's discussion of Dr. Hasan's opinion is sufficient.

### 4. Reviewing Psychologists

Finally, Anderson argues that the ALJ erred when granting the opinions from agency reviewing psychologists "great weight." She contends it is "legal error to elevate the opinion of a reviewing doctor over a treating doctor where the non-treating medical source had not reviewed the opinion of the treating psychiatrist." (R. 10, PageID #: 960, citing *Blakley*, 581 F.3d at 406-407.) Anderson cites to a

section from *Blakley* that does not support her contention of legal error, but simply discusses the "good reasons" requirement in general terms. *Blakley*, 581 F.3d at 406-407. The Sixth Circuit, in any event, has rejected the notion of imposing a "blanket prohibition on an ALJ's adoption of a non-examining source opinion, where that source has not reviewed the entire record." *Kepke v. Commissioner*, 636 Fed.Appx 625, 632 (6th Cir. 2016). *Kepke* stated:

> The Court's holding in *Blakley* is far more limited, requiring only that before an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give "some indication" that he "at least considered" that the source did not review the entire record.  *Id.*  In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny.

*Kepke*, 636 Fed.Appx at 632 (citing *Blakley*, 581 F.3d at 409).

State agency doctors and psychologists are considered highly-qualified experts in disability evaluation, and the ALJ must consider their evidence. 20 C.F.R. §§ 416.927(c)(1), (e)(2)(i) and (ii); SSR 96-8p. Although the ALJ generally accords more weight to a treating source over those of a non-examining source, the ALJ is not prohibited from adopting the findings of a non-examining source. *See generally Smith v. Commissioner*, 482 F.3d 873, 875 (6th Cir. 2007); 20 C.F.R. § 416.927(e). "An administrative law judge may give more weight to the opinions of examining or consultative sources where the treating physician's opinion is not well-supported by the objective medical records." *Dyer v. Social Sec. Admin.*, No. 13-6024, 2014 WL 2609548, at *5 (6th Cir. June 11, 2014) (citing *Gayheart*, 710 F.3d at 376, 379-380).

35

Dr. Hoyle and Dr. Rivera each completed a "Mental Residual Functional Capacity Assessment," which the ALJ found to be consistent with the mental status examinations, the claimant's activities of daily living, and the mental RFC assessed by the ALJ. (R. 8, tr., at 33, 112-114, 127, 130-132.) The court finds that the ALJ did apply scrutiny to the opinions of the agency consultants, Dr. Hoyle and Dr. Rivera, and finds no error in the ALJ's assessment of those opinions.

## VIII.  CONCLUSION

For the foregoing reasons, the undersigned recommends that the decision of the ALJ be vacated and remanded, in part, and affirmed in part.

The court finds that the decision of the Commissioner is not supported by substantial evidence because the ALJ committed error at Step Three, and such error is not harmless. The decision should be remanded for a more complete evaluation of whether Anderson's impairments meet or medically equal the severity of Listing 14.09.

The court, however, recommends rejecting the plaintiff's remaining arguments.

s/ David A. Ruiz
David A. Ruiz
United States Magistrate Judge

Date:  December 21, 2018

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file

objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).